NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| YOLANDA JOHNSON, | : | |
| Plaintiff, | : | Civil No. 18-15209 (RBK/KMW) |
| v. | : | **OPINION** |
| STATE FARM FIRE AND CASUALTY CO., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion for Summary Judgement (Doc. 22.) For the reasons stated herein, the Motion for Summary Judgment is **GRANTED**.

**I.   BACKGROUND**

Plaintiff is Yolanda Johnson, the owner of a house in Medford, New Jersey. (Doc. 22-4, Defendant's Statement of Material Facts "Def. Statement" ¶1.) In February 2018, Plaintiff discovered water on the floors of her finished basement. (Def. Statement ¶2.) Upon discovery of the water, Plaintiff reported a claim to her home insurance provider, Defendant State Farm Fire and Casualty Co. ("State Farm"), contacted a public adjuster, and hired a plumber. (Def. Statement ¶¶3–5, 15.)

The following facts about Plaintiff's basement are undisputed. Plaintiff's basement is below grade. (Def. Statement ¶6.) A drainage system around the perimeter foundation of the basement collects subsurface water in pipes that run beneath the basement floor. (Def. Statement ¶¶6–8.) These pipes then drain into a "sump pump" well located in the back corner of the basement.

1

(Def. Statement ¶¶6–8.) A "French drain" runs around the perimeter of the basement. (Def. Statement ¶9.) There is a gap where the basement floor intersects with the bottom of the cinderblock foundation wall, and this gap is part of the French drain system. (Def. Statement ¶¶8–11.) Plaintiff's home has a pool and a pool house in the backyard of her home. (Doc. 24-2, "Pl. Statement" ¶14.) The pool house is a detached structure. (Pl. Statement ¶14.) Around February 28, 2020, a water supply line in the pool house ruptured. (Pl. Statement ¶¶13–20.)

Plaintiff and Defendant disagree over the source of the water that infiltrated the basement. Defendant's theory is that the sump pump failed, causing water damage throughout the basement. (Doc. 22, "Mot." at 1.) Plaintiff contends that the water which entered the basement came from the ruptured pool house pipe. (Doc. 24, "Reply" at 1.) Defendant, however, contends that regardless of where the water came from, the "water that entered into the basement was necessarily 'underground' before it 'came through the gap' and overflowed onto the basement floor. (Reply at 1.)

After discovering the water damage, Plaintiff sought coverage from the Defendant pursuant to her home insurance policy (the "Policy"). The Policy provides general coverage for water damage, but does include the following exclusions:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> > Water, meaning: (1) flood, surface water, waves (including tidal water, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not; (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed

>to remove subsurface water which is drained from the foundation area; (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or (4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

(Mot. at 6.)

Plaintiff filed a claim seeking coverage under the Policy. (Pl. Statement ¶¶25–29.) Defendant denied Plaintiff's claim, citing to the aforementioned water damage exclusion. (Pl. Statement ¶29.) Following the denial of coverage, Plaintiff filed suit against Defendant on September 17, 2018, asserting claims for (1) breach of contract and (2) bad faith. (Doc. 1.) The Court granted Defendant's motion to dismiss the bad faith claim. (Doc. 13.) As such, all that remains is Plaintiff's claim for breach of contract for Defendant's alleged failure to pay Plaintiff's claim for the water damage.

## II.   LEGAL STANDARD

### A. Motion for Summary Judgment

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility

3

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which a jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. New Jersey Law on Insurance Policy Interpretation

A court exercising diversity jurisdiction over an insurance dispute must apply state substantive law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 64 (1938). Both parties submit that New Jersey law applies. Under New Jersey law, the interpretation of an insurance policy is a "question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012). An insurance policy should be "interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mat. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). Where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). Where the terms of the policy are ambiguous, however, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). However, ambiguities

will not be forced into an insurance policy nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question. *Id.*

Exclusions within an insurance policy are narrowly interpreted and construed in accord with the objectively reasonable expectations of the insured. *Princeton Ins. Co. v. Chunmuang,* 698 A.2d 9, 11 (N.J. 1997). Although exclusionary clauses are construed narrowly, they will be applied where they are "specific, plain, clear, prominent, and not contrary to public policy." *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, A-1647-13T4, 2015 WL 248490, at *4 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (citing *Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super. Ct. App. Div. 2010)).

### III. DISCUSSION

Defendant seeks summary judgment on Plaintiff's breach of contract claim. Under New Jersey law, a breach of contract claim requires proof of the following: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). In order to succeed on her breach of contract claim, Plaintiff must show that she was entitled to receive coverage under the Policy, and Defendant failed to provide such coverage. *See id.*

Although the parties ultimately disagree on the source of the water that ended up in Plaintiff's basement, this fact is not material for purposes of adjudicating the present summary judgment motion. Further, Defendant accepts Plaintiff's theory as to the "origin" of the water as true for purposes of summary judgment. (Reply at 7.) Accordingly, the Court assumes, for this motion, that the water that entered the basement floor originated from the broken pipe in the pool house. (Reply at 4.) Therefore, this case turns on the interpretation of the Policy. Because the

construction of an insurance policy is a question of law, this matter may be resolved on summary judgment. The issue ultimately is whether Defendant was required to compensate Plaintiff for the damage to her basement or whether the damage was not covered by the Policy due to the Policy exclusions.

Defendant argues that the Policy excludes from coverage damage that comes from "water below the surface of the ground." (Mot. at 13.) As an initial matter, the Court finds that the language included in the Policy is unambiguous. Plaintiff does not make any argument that the Policy or its exclusions contained any ambiguous language; nor could she. The Policy's terms are clear and not subject to more than one plausible interpretation. Therefore, the Court does not force any ambiguities into the Policy, and the Policy will be taken at face value.

In response, Plaintiff argues that the loss does not fall under the subsurface water exclusion because the water which entered into the basement originated from a broken pipe located in the pool house and was not originally subsurface water. (Opp. at 10.) In response, Defendant argues that the Policy unequivocally excludes coverage for losses caused by water below the surface of the ground, regardless of the original source of that water. (Mot. at 13.) Defendant contends that the water, regardless of its source, necessarily entered the ground before entering the basement, thereby making it subsurface water. (Mot. at 13.)

Defendant cites to a Third Circuit case, *Colella v. State Farm Fire & Cas. Co.*, 497 Fed App'x 616 (3d Cir. 2011). In *Colella*, a plaintiff sought coverage from State Farm after water from a burst pipe seeped into the ground and then leaked through a basement wall, causing damage to the plaintiff's basement interior. *Id.* at 616–18. The plaintiff was insured by a nearly-identical policy with a nearly-identical exclusion for damage caused by subsurface water. *Id.* State Farm denied coverage, declaring that "[b]ecause the water leaking from the damaged drain line first

6

entered the ground before leaking through the basement wall, . . . the damage in the basement [was] caused by water below the surface of the ground[.]" *Id.* at 618. The District Court concluded that the sub-surface water exclusion was unambiguous and applied to the plaintiff's claims because the exclusion "clearly and succinctly state[d] that regardless of the cause, any water damage which seep[ed] into the foundation from water below the surface of the ground [was] not covered by the Policy." *Id.* at 619 (citing *Colella v. State Farm Fire & Cas. Co.*, No. 09-2221, 2010 WL 1254318, at *4 (E.D. Pa. Mar. 30, 2010)). The court granted summary judgment in favor of the defendant, and on appeal, the Third Circuit affirmed. *Id.* In so holding, the Third Circuit gave particular emphasis to the exclusion's "expansive lead-in clause" which stated that the exclusion applied "regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event[.]" *Id.* at 620–21.

      The facts of the present case are nearly identical. Based on the undisputed facts, regardless of where the water originated from, the water that damaged Plaintiff's basement necessarily passed through the surface of the ground and entered the basement. The Policy unambiguously excludes coverage for damage caused by subsurface water. And as the Third Circuit has held based on nearly-identical policy language, this kind of damage is barred by Defendant's Policy language. The Court agrees with Defendant that the similarity of this case to *Colella* militates a parallel holding.

      Plaintiff's argument that the exclusion does not apply because the water originated from a broken pipe in the pool house does not hold weight. Similar to *Colella*, the Policy here contains important lead-in language, which specifies that the exclusion applies regardless of the cause or source of the water. In other words, as the Third Circuit held in *Colella*, it does not matter where the water originated, because the lead-in language provides that no coverage exists for this type of

damage, regardless of any other causes. Accordingly, because the water at some point went below the surface of the ground before entering Plaintiff's basement, it is immaterial where the water originated. The damage is nevertheless excluded based on the Policy's plain language. Because the Court finds that the policy language excludes coverage, Plaintiff cannot prove that Defendant breached its contract by failing to compensate Plaintiff for her loss. Therefore, summary judgment is warranted in favor of Defendant on Plaintiff's breach of contract claim.

### IV.     CONCLUSION

For the reasons contained herein, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**. An accompanying Order shall issue.


Dated: 3/29/2021                                                                    /s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge